21393

The STATE, Respondent, v. James LOFTIN, Appellant.

(275 S. E. (2d) 575)

*Staff Atty. David W. Carpenter,* of *S. C. Commission of Appellate Defense,* Columbia, *for appellant.*

*Atty. Gen. Daniel R. McLeod* and *Asst. Atty. Gen. Kay G. Crowe,* Columbia, *Sol., Claude A. Taylor, Jr.,* Spartanburg, *for respondent.*

February 18, 1981.

GREGORY, Justice:

Appellant James Loftin was convicted of forgery and sentenced to two (2) years imprisonment. The trial judge also revoked a prior probationary sentence to be served consecutively to the forgery sentence. We reverse the revocation of appellant's probation and the forgery conviction and remand for a new trial.

Appellant assigns error to the admission in evidence of two checks found in his apartment. We agree the checks should have been excluded as fruits of an illegal search.

A prosecution witness, J. A. Nickols, testified that three checks were discovered missing from his place of business in Spartanburg County. On June 6, 1979, Charles Keenan, one of appellant's employees, entered a bank in Pacolet, South Carolina and attempted to cash one of the missing checks, made payable to "James Lawson" for $265.00 and signed with the name of "J. A. Nickols". Upon Keenan's presenting the check for payment, the police were notified. They came and Keenan was arrested. When questioned by police, Keenan apparently indicated that he received the check, already filled in [1], from appellant. He told the police appellant was outside in his van and could verify appellant

sent him into the bank with the check. The bank assistant manager, who had telephoned the police, knew appellant and was familiar with his van. She noticed the blue van in the bank parking lot for five or ten minutes but it had gone when the police arrived. The rear of the van was toward the bank. She could not see the occupant.

Based on Keenan's statement, the police obtained an arrest warrant for appellant and proceeded to his apartment. One officer testified when they arrived, no one appeared to be home. They knocked on the door but received no answer. The officers staked out the apartment for about an hour and a half without observing any activity within or other sign of appellant's presence. They then persuaded the apartment complex manager to let them enter appellant's apartment. During the search they discovered a police jacket in a closet they believed had been stolen from the local sheriff's department. The officers returned to the police station to verify that a jacket had been stolen. Upon verification, they obtained a search warrant for the apartment. The police returned to the apartment with the search warrant and seized the jacket. The two remaining missing checks admitted in evidence were found in a pocket of the jacket.

The State contends the officers' initial search of appellant's residence was legal because they entered the apartment with the permission of the manager who had an express contractual agreement granting her a right of entry.

A landlord may not validly consent to a search of a ■ tenant's residence. *State v. Moultrie,* 271 S. C. 526, 248 S. E. (2d) 486 (1978), citing *Chapman v. U. S.,* 365 U. S. 610, 81 S. Ct. 776, 5 L. Ed. (2d) 828 (1961). That appellant's apartment manager had some contractual right of entry does not alter this rule. A person who confers a right to enter an area, without conferring an equal or similar right to the use or enjoyment of that area, does

---

[1] Keenan admitted at trial that he endorsed the name of "James Lawson" on the back of the check which was introduced in evidence without objection.

not authorize the other to consent on his behalf to a search by law enforcement authorities. See *U. S. v. Matlock,* 415 U. S. 164, 94 S. Ct. 988, 39 L. Ed. (2d) 242 (1974); *Stoner v. California,* 376 U. S. 483, 84 S. Ct. 889, 11 L. Ed. (2d) 856 (1964); *Chapman v. U. S., supra.*

The State also contends the initial search was legal on the ground the officers were lawfully on the premises pursuant to a valid arrest warrant and they reasonably believed appellant was in the apartment.

A valid arrest warrant implicitly grants police the limited authority to enter a suspect's residence "when there is reason to believe the suspect is within." *Payton v. New York,* 445 U. S. 573, 603, 100 S. Ct. 1371, 1388, 63 L. Ed. (2d) 639, 661 (1980). In the instant case, there simply were no facts or circumstances from which the officers could have entertained a reasonable belief appellant was in his apartment. As previously related, an officer testified no one appeared to be at home when they arrived. No one answered when the officers knocked on appellant's door and the officers staked out the apartment for an hour and a half without discovering any sign of appellant. Moreover, one officer, who resided close by in the same apartment complex, was familiar with appellant's blue van which had been parked at the bank and testified it was not then in the parking area of the apartment complex.

Under the facts of this case, we conclude that the checks found in appellant's residence were the products of an illegal search and should have been excluded from evidence. Accordingly, the conviction is reversed and the case remanded for a new trial.

Likewise, we reverse the revocation of appellant's probation. The State concedes that the trial judge revoked appellant's probation without benefit of the probation warrant required by S. C. Code § 24-21-450 (1976). Consequently, the revocation of the probation sentence is a nullity. *State v. Brunson,* S. C., 262 S. E. (2d) 44 (1980).

52

Finally, we note appellant proceeded *pro se* at trial. The record now before us indicates the presiding judge failed to determine whether appellant's request to proceed *pro se* constituted a knowing and intelligent waiver of his right to counsel. See *State v. Dixon,* 269 S. C. 107, 236 S. E. (2d) 419 (1977), citing *Johnson v. Zerbst,* 304 U. S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938). Accord, *State v. Hallock,* 269 S. E. (2d) 774 (S. C. 1980). Should appellant desire to proceed *pro se* at his new trial, the judge is directed to hold a hearing in accordance with the procedure employed in *Dixon, supra,* to determine whether the waiver of representation by counsel is voluntary and intelligent.

Reversed and remanded.

LEWIS, C. J., and LITTLEJOHN, NESS and HARWELL, JJ., concur.